**CENTRAL MIDWEST INTERSTATE LOW–LEVEL RADIOACTIVE WASTE COMMISSION, et al., Plaintiffs,**

v.

**Hazel O'LEARY, Secretary of Energy, Defendant.**

No. 93–3131.

United States District Court, C.D. Illinois, Springfield Division.

July 22, 1994.

Lance T. Jones, Thomas R. Lamont, Gordon & Glickson PC, Eric M. Schwing, Babette P. Salus, Schwing & Salus PC, Springfield, IL, for The Central Midwest Interstate Low-Level Radioactive Waste Com'n.

Christine Zeman, Giffin Winning Cohen & Bodewes PC, Springfield, IL, Julie A. Bauer, Marie A. Lona, Winston & Strawn, Chicago, IL, for Commonwealth Edison Co.

James A. Lewis, U.S. Atty., Springfield, IL, Louise F. Milkman, Mark R. Haag, Environment & Natural Resources Div., Thomas W. Millet, Marcia K. Sowles, Dept. of Justice, Civ. Div., Washington, DC, for Hazel O'Leary.

Michael S Beer, Gary B. Pasek, Illinois Power Co., Decatur, IL, for Illinois Power Co.

## OPINION

RICHARD MILLS, District Judge:

A case of statutory construction.

The Court is presented with motions for summary judgment concerning a ruling of the Department of Energy interpreting a nuclear waste disposal statute.

The Department is affirmed.

### I. Background

This cause of action is the result of a federal statute enacted to promote the efficient disposal of radioactive waste produced by nuclear power generators. Under 42 U.S.C. § 2021e(a) & (d), certain states with excess capacity storage facilities for low level radioactive waste may charge for waste received from utility waste generators of other states and deposit 25% of the proceeds in trust with the Department of Energy. The surcharge rates and the process of placing the funds in escrow are set forth in 42 U.S.C. § 2021e(d)(1) and (d)(2)(A), respectively. In order to promote more uniform nationwide disposal of radioactive waste, 42 U.S.C. § 2021d(a)(2) provides that states may enter into compacts to establish regional disposal facilities. Illinois and Kentucky entered into such a compact, which is administered by Plaintiff Central Midwest Waste Commission.

Certain targets were established by the federal waste statute to encourage the development of these regional disposal facilities. Under the statute, if by January 1, 1993, a state or compact whose utilities export radioactive waste is "able to provide for the disposal of all low-level waste generated within such ... compact region," the Department of Energy is required to remit the 25% escrow funds to the state or compact within 30 days. 42 U.S.C. § 2021e(d)(2)(B)(iv). However, if the state from which the waste originated is unable to provide for the disposal of its own radioactive waste by that time and the state declines to take possession of its waste, then the funds held in trust are to be repaid by the Department of Energy, with interest, to the generators of the waste over a period of thirty-six months, beginning February 1, 1993. 42 U.S.C. § 2021e(d)(2)(C). Nonetheless, if during the three-year repayment period the state compact should be able to provide for the disposal of its radioactive waste, then the compact is entitled to a lump-sum payment of the remaining escrow fund balance. *Id.*

In this case, Illinois Power and Commonwealth Edison each generated and paid surcharges on radioactive waste which was sent outside of Illinois and Kentucky for storage. The total amount of the surcharges paid is $1,042,448 and $9,607,165, respectively. Plaintiff Central Midwest Waste Commission is entitled to receive 25% of these surcharges held in escrow by the Department of Energy upon proof of adequate waste disposal capacity as of January 1, 1993. In order to satisfy the statute's target, Plaintiff Central Midwest did not develop any of its own disposal facilities in Illinois or Kentucky, but instead entered into a contract with the Southeast Interstate Waste Commission—another compact of states—for disposal of radioactive waste through June 30, 1994. When the Department of Energy failed to make any

payments within 30 days after the January 1, 1993 target date, Plaintiff Central Midwest filed the present action, seeking declaratory and injunctive relief. Thereafter, Plaintiffs Illinois Power and Commonwealth Edison intervened, asking the Court to declare that they are entitled to receive the funds held by the Department of Energy.

On March 25, 1994, the Department of Energy issued its final decision concerning the escrow funds. The Department held that the contract entered into by Plaintiff Central Midwest Waste Commission with the Southeast Interstate Waste Commission satisfied in part the January 1, 1993 statutory target, because the Central Midwest Waste Commission had arranged for disposal of its nuclear waste through June 30, 1994. The Department of Energy thus determined that the Central Midwest Waste Commission was entitled to receive a lump-sum payment of one-half of the escrow funds, with the balance to be paid to the utility waste generators on a monthly basis for the remainder of the three-year repayment period (until January 1, 1996) unless Central Midwest should enter another 18–month contract for disposal of its waste or continue to ship waste to the Southeast Commission without a modified contract. If a new contract were entered for the remainder of the three-year period, the Central Midwest Waste Commission would be entitled to another lump-sum payment; otherwise, it could receive payment on a monthly basis for as long as it continued to send nuclear waste to the Southeast Commission after the expiration of the original contract in June of 1994.

Plaintiffs Illinois Power and Commonwealth Edison now move for judgment as a matter of law, arguing that the ruling of the Department of Energy is void, because it is contrary to the language of the waste disposal statute. Illinois Power and Commonwealth Edison contend that the statute requires each state or compact to provide for disposal of its radioactive waste by development of its own disposal facilities, and not by transferring its waste to another compact. Because the Central Midwest Waste Commission did not provide for disposal of radioactive waste within Illinois or Kentucky, Illinois Power and Commonwealth Edison seek a declaration that they are entitled to all of the escrow funds, and they request that this Court order the Department of Energy to disburse those funds to them. Payment of the funds has been stayed pending the outcome of this litigation. The Defendant has also filed a motion for summary judgment, seeking an affirmance of its ruling, and Plaintiff Central Midwest Waste Commission has filed a motion requesting this Court to affirm the Department of Energy's ruling that Central Midwest has made adequate provision for disposal of its waste through June 30, 1994, but requesting that the case be remanded to the Department of Energy for reconsideration of its ruling that the utility generators may be entitled to payment of the remaining escrow funds after June 30, 1994.

## II.  Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983).

III.  Analysis

■   There is no factual dispute in this case.  The only contested issue is whether the decision of the Department of Energy directing the payment of the escrow funds is consistent with the language of 42 U.S.C. § 2021e.  Consequently, this Court is presented with a question of statutory interpretation, which is a matter capable of being resolved by means of summary judgment.

### A.  The Statute

In order to determine which party is entitled to the funds held by the Department of Energy, the Court will examine the language of the waste disposal statute.  42 U.S.C. § 2021e(d)(2)(B)(iv) specifies that 25% of the surcharges collected by a state receiving nuclear waste through December 31, 1992 and deposited with the Department of Energy are to be paid to the state or compact which generated the radioactive waste "if, by January 1, 1993, the State in which such waste originated (or its compact region, where applicable) is able *to provide for the disposal of all low-level radioactive waste generated within such State or compact region.*"  (emphasis added).

The meaning of this portion of the statute is the basis of the present dispute.  A straightforward reading of this section of the statute would indicate that a state which generates radioactive waste must have made provision for disposal of its waste by January 1, 1993.  But what is meant by the term "disposal"?  Also, what is the period of waste generation that must satisfy the target date?  Presumably, the statute applies to all radioactive waste generated *after* December 31, 1992, but for how long after that date?  Unfortunately, the last sentence of the statute is missing a crucial modifier to explain these voids.  Hence, the Court must determine whether the Department of Energy has made a reasonable interpretation of the statute.  *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 840–43, 104 S.Ct. 2778, 2780–82, 81 L.Ed.2d 694 (1984).

### B.  The Meaning of "Disposal"

■   By itself, the word "disposal" means to get rid of something.  However, any generator of nuclear energy, by necessity, must get rid of the waste generated by the fission process.  Thus, simply to look at the word "disposal" provides no guidance.  The Defendant and Plaintiff Central Midwest Waste Commission argue that waste is "disposed of" under the statute if a compact has made a contract for storage of its waste with a waste facility somewhere (also known as a nuclear garbage dump) by the target date.  Plaintiffs Illinois Power and Commonwealth Edison, on the other hand, contend that a compact by January 1, 1993 must have developed its own storage facilities for its own nuclear waste.

Since there is no language in the statute mandating self-sufficiency, the Court must look to other parts of the statute to resolve the meaning of the term "disposal."  Under 42 U.S.C. § 2021c(a)(1)(A), every state is "responsible for providing, either by itself or in cooperation with other States, for the disposal of low-level radioactive waste generated within the State."  42 U.S.C. § 2021d(a)(2) authorizes states to enter into compacts "to provide for the establishment and operation of regional disposal facilities for low-level radioactive waste."  However, the statute does not mandate that states develop their own disposal facilities.

42 U.S.C. § 2021e(e)(1)(F) provides that a state or compact may "enter into an agreement with the compact commission of a region in which a regional disposal facility is located to provide for the disposal of all low-level radioactive waste generated within such State, and, by virtue of such agreement, may ... be deemed to be in compliance with subparagraphs (A), (B), (C), and (D)."  Subparagraphs (A), (B), (C), and (D), however, deal with certain target dates for states to obtain a license to operate a radioactive waste disposal facility.  By virtue of § 2021e(e)(1)(F), though, a state or compact may evade the requirement of developing a licensed waste disposal facility if it ships its waste to another state or compact.  Thus, § 2021e(e)(1)(F) has no applicability to the present dispute.

Without any further guidance in the statute, the Court is left to the plain meaning of the language in 42 U.S.C. § 2021e(d)(2)(B)(iv). As it stands, the statute provides that a regional compact may obtain the 25% rebate if by the end of 1992 it is able to provide for *the disposal* of all low-level radioactive waste generated within the compact region. In other words, the compact must have access to some type of nuclear garbage facility by the end of 1992. If Congress had meant for each compact to develop its own waste disposal facilities by the end of 1992, it would have expressly included such a condition in the statute. Instead, Congress merely required that states develop a means for disposing of their nuclear waste by the target date.

Apparently, this statute was designed to prevent unplanned disposal (or storage, since the waste cannot be eliminated) of radioactive waste, and by requiring states to provide in advance for the disposal of their waste, Congress hoped to avoid a situation where states would be unable to find a facility for storage of their nuclear waste. If 42 U.S.C. § 2021e(d)(2)(B)(iv) is construed to require states to develop their own disposal facilities in order to receive the 25% rebate, it would be redundant to § 2021e(d)(2)(C), which allows a state to obtain the rebate if it chooses to take possession of its waste. A state which develops its own disposal facilities for its own waste has, by definition, taken possession of its waste. Thus, 42 U.S.C. § 2021e(d)(2)(B)(iv) would be meaningless if it required such a duplicative result, and Congress does not generally employ purposeless language in a statute.

The only common sense interpretation that can be given to § 2021e(d)(2)(B)(iv)—if it is to have any meaning at all—is that it is an alternative way for a state to receive the rebate without actually taking possession of its own waste. If a state or compact does not develop its own storage facilities, it can still receive the rebate as long as it has made plans for storage of its waste—as opposed to having no plan for the storage of its waste, in which case it forfeits the surcharge rebate to the utility generators who must find a place to store the waste. It makes sense that the utility generators should not receive a rebate if a state compact has arranged for the disposal of the utilities' waste.

### C. The Time Frame for Disposal

■ In this case, the Central Midwest Waste Commission in November of 1992 entered a contract with the Southeast Waste Commission for disposal of radioactive waste generated in Illinois and Kentucky through June of 1994. Thus, by the end of 1992, Plaintiff Central Midwest had made provision for the disposal of some of its nuclear waste that would be produced after 1992 and had complied in part with the directive of 42 U.S.C. § 2021e(d)(2)(B)(iv), making it unnecessary for the utility generators to find a means of storing their waste. Section 2021e(d)(2)(B)(iv), though, does not specify for how long a state must have made provision for the disposal of its waste. Based on the language of 42 U.S.C. § 2021e(d)(2)(C), it appears that there is a three-year monitoring period of each state's disposal ability, beginning in January of 1993. Under § 2021e(d)(2)(C), if a state or compact region has failed to provide for disposal of its waste by the target date, it is still entitled to receive a portion of the 25% rebate, if, during some time prior to January 1, 1996, it makes provision for the disposal of its radioactive waste. Since payments to the utility generators are made on a monthly basis under 42 U.S.C. § 2021e(d)(2)(C)(ii), those payments can be stopped during the three-year period, and a *pro rata* lump sum amount can be paid to the state or compact region for the remaining time for which it has made provision for the storage of its nuclear waste.

Here, the Department of Energy has interpreted § 2021e(d)(2)(C) conversely to mean that a utility generator is entitled to receipt of part of the rebate if during the three-year monitoring period a compact region becomes unable to provide for the disposal of its radioactive waste. The Court finds this interpretation of the statute to be entirely reasonable.

Under 42 U.S.C. § 2021e(d)(2)(C), there is a three-year monitoring period of each state or compact's waste disposal plans, with a final target date of January 1, 1996. If by January of 1996 a state has not made provi-

sion for the future storage of its radioactive waste, the statute requires the state to take possession of its waste *ad infinitum.* *Id.* This portion of § 2021e(d)(2)(C) has been found unconstitutional by the U.S. Supreme Court because it exceeds Congress' power to regulate the states; however, the Supreme Court determined that the "take title" provision was severable from the rest of the statute, leaving the remaining provisions operative upon the states. *New York v. United States,* —— U.S. ——, ——, 112 S.Ct. 2408, 2434, 120 L.Ed.2d 120 (1992). The Supreme Court found that even with the invalidation of the take title provision, the purpose of the statute remained viable, because states would have to deal with their nuclear waste problem if they could not gain access to waste disposal facilities in other states. *Id.*

The three-year monitoring period of 42 U.S.C. § 2021e(d)(2)(C) is thus consistent with the statute's purpose of encouraging state compacts to arrange for disposal of their radioactive waste. If during the three years a compact region should either make arrangements for the disposal of its nuclear waste, or having previously made provision therefor, should become unable to dispose of its waste, the payment of the rebate should be affected accordingly. The Department of Energy's interpretation of the federal waste statute provides for such a result. Here, there is no evidence that Plaintiff Central Midwest has entered another 18–month disposal contract with the Southeast Waste Commission. Consequently, the Central Midwest Waste Commission will be entitled to monthly payment of the rebate after June of 1994 for only so long as the Southeast Commission allows the Central Midwest Commission to export its nuclear waste. If at any time prior to January of 1996 the Central Midwest Commission should become unable to transfer its waste to the Southeast Commission, the utility generators will become entitled to receipt of the rebate payments, since they will have to find a means for disposing of the waste. This is what the statute implicitly directs, and the Department of Energy has so held.

*Ergo,* the motion of Plaintiffs Commonwealth Edison and Illinois Power for summary judgment is DENIED, and the Defendant's motion for summary judgment is ALLOWED. The final decision of the Department of Energy is AFFIRMED. Accordingly, Plaintiff Central Midwest's motion to affirm in part and remand in part the determination of the Department of Energy is ALLOWED in part and DENIED in part.

The stay of payment of the escrow funds is hereby lifted, and the Department of Energy is directed to disburse the funds forthwith in conformity with its final decision of March 25, 1994. The parties are to bear their own costs.

SO ORDERED.

CASE CLOSED.