## APPALACHIAN STATES LOW–LEVEL RADIOACTIVE WASTE COMMISSION, Plaintiff,

v.

## Hazel O'LEARY, Secretary, United States Department of Energy, Defendant.

### Civil No. 3:CV–94–1033.

United States District Court, M.D. Pennsylvania.

May 22, 1995.

647

Timothy B. Anderson, John W. Carroll, Pepper, Hamilton & Scheetz, Harrisburg, PA, for Appalachian States Low–Level Radioactive Waste Commission.

Thomas Millet, Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, Marcia K. Sowles, Department of Justice, Civil Division, Washington, DC, Robert J. DeSousa, U.S. Attorney's Office, Lewisburg, PA, Frank W. Hunger, U.S. Department of Justice, Civil Division, Washington, DC, for Hazel O'Leary.

### *MEMORANDUM*

KOSIK, District Judge.

Presently before the court are cross motions for summary judgment filed by the parties. The parties have submitted the proper briefing so that the motions are ready for disposition. For the reasons that follow, the court will grant the motion for summary judgment filed by the plaintiff, will deny the motion for summary judgment filed by the defendant and will grant the mandamus relief requested by the plaintiff.

## I. BACKGROUND

The plaintiff commenced the instant action in the nature of mandamus, pursuant to 28 U.S.C. § 1331 and 1361 on June 30, 1994.[1]

---

1. 28 U.S.C. § 1361 states that, "The district courts shall have original jurisdiction of any ac-

The Commission seeks an order from the court compelling Hazel O'Leary, the Secretary of the United States Department of Energy (the "Secretary" or "DOE") to refund monies withheld under the Low Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. § 2021b *et seq.*, as follows:

*The Statutory Framework*

■ Under the Low Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. § 2021b *et seq.* (hereinafter, the "Act"), the United States government sought to promote the safe and efficient disposal of low level radioactive waste (LLW) generated throughout the country, by encouraging the establishment and operation of regional disposal facilities.[2] The Act provides that individual states could group together into compacts to establish regional disposal facilities,[3] and/or to arrange for collective disposal of their LLW in facilities outside of their respective regions.

To encourage the states to provide for the regional disposal of their LLW in a timely manner, the Act established the following incentive system, termed "Milestone Incentives", involving the collection of surcharges by states with LLW disposal facilities ("sited states") and the payment of rebates to LLW generating states which have met certain criteria:

(1) Sited states are authorized to impose surcharges on out-of-state generators of LLW for the disposal of the waste from January 1, 1986 until December 31, 1992. 42 U.S.C. § 2021e(d)(1).

(2) 25 percent of the surcharges collected by the sited states are to be transferred to an escrow account held by the Secretary of Energy as trustee. The Secretary is to invest the funds in an interest bearing account. 2021e(d)(2)(A).

(3) If a state (or compact) "provides for the disposal of" all LLW by January 1, 1993 it is to receive a lump sum refund of the 25 percent collected and held by the Secretary. 2021e(d)(2)(B)(iv).

(4) If a state (or compact) "provides for the disposal of" all LLW *after* January 1, 1993 and prior to January 1, 1996, the state (or compact) will be paid a refund of the 25 percent collected by the Secretary, *minus* ("adjusted to reflect") the time that has elapsed after January 1, 1993.[4]

*Factual History*

The underlying facts of this case are not disputed nor are they overly complex. Pursuant to the Act, the states of Pennsylvania, Delaware, Maryland and West Virginia formed a compact, entitled the "Appalachian Compact", sometime prior to December 1, 1992, to collectively dispose of low-level nuclear waste generated in their region, the "Appalachian Region".[5] The plaintiff in this action, the Appalachian States Low–Level Radioactive Waste Commission (the "Commission") is the governing body of the Appalachian Compact.

On December 1, 1992, the Commission entered into an eighteen month agreement with the Southeast Interstate Radioactive Waste Management Commission (the "Southeast Commission"), whereby the Southeast Commission was to provide for disposal of all LLW generated in the Appalachian Region at the Barnwell, South Carolina disposal facility from January 1, 1993 until June 30, 1994.[6] Southeast imposed surcharges upon the Appalachian Compact pursuant to the Act, 25 percent of which were transferred to the Secretary who placed them in escrow.[7]

tion in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

**2.** *See* 42 U.S.C. § 2021d(a); 57 Fed.Reg. 45248 (September 1, 1992); 59 Fed.Reg. 15188–90 (March 31, 1994). *Also see, Central Midwest Interstate Low–Level Radioactive Waste Commission v. O'Leary*, 858 F.Supp. 114, 115 (C.D.Ill. 1994), *infra*.

**3.** *See* 42 U.S.C. § 2021d(a).

**4.** *See infra.*

**5.** *See* Pub.L. 100–319, 102 Stat. 471, *et seq.* (May 19, 1988).

**6.** Southeast Contract is attached to complaint as Exhibit A.

**7.** The parties agree that the principal amount of the Appalachian Surcharges is $3,643,525.40. *See* complaint, paragraphs 17 *and* defendant's statement of undisputed material facts (Docu-

By letters dated February 11, 1993 and April 22, 1994, the Commission requested that the Secretary refund all of the escrowed Appalachian Region surcharges.[8] The Secretary initially declined to offer a rebate. On September 1, 1994, after the filing of the instant action, the Secretary paid a rebate to the Commission representing one half of the escrowed surcharge, $2,124,307.69.[9]

Both parties have filed motions for summary judgment[10] and supporting briefs. As discussed below, the Secretary claims that the Commission is only entitled to the partial rebate because the contract between the Appalachian Compact and the Southeast Commission (the "Southeast Contract") was for only eighteen months, one half of the three year period—January 1, 1993 to January 1, 1996—allegedly required by § 2021e(d) of the Act. The Commission argues that it is entitled to a full rebate because it provided for disposal of all waste by the January 1, 1993 Milestone date, and that the fact that the contract did not cover the entire three year period is of no concern.

## II. STANDARD OF REVIEW

■ Rule 56(c) of the Federal Rules of Civil Procedure states that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has held that Rule 56(c), "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). Summary judgment will not lie, "if the dispute about a material fact is 'genuine', that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See Gile v. Optical Radiation Corp.,* 22 F.3d 540, 541 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994).

## III. DISCUSSION

There is no factual dispute before the court. The entire controversy is a matter of legal interpretation, centering on provisions in the Low Level Waste Management Act, 42 U.S.C. § 2021e(d), which relate to surcharge collection and repayment. The statute, in relevant part, reads as follows:

**§ 2021e(d) Use of surcharge funds for milestone incentives; consequences of failure to meet disposal deadline** ...

**(2) Milestone incentives** ...

**(B) Payments**

**(iv)** The twenty-five per centum of any amount collected by a State under paragraph (1) for low-level radioactive waste disposed of under this section during the period beginning January 1, 1990 and ending December 31, 1992, and transferred to the Secretary under subparagrah (sic.) (A), shall be paid by the Secretary in accordance with subparagraph (D) *if, by January 1, 1993,* the State in which such waste originated (or its compact region, where applicable) is able to *provide for the disposal of all low-level radioactive waste* generated within such State or compact region.

---

ment 20) at paragraph 9. Plaintiff alleges that interest as of March 31, 1994 is $538,915.17. Complaint, paragraph 18.

**8.** Letters attached to complaint as Exhibits B and C.

**9.** *See* defendant's statement of undisputed facts, paragraph 9.

**10.** *See* Documents 8 and 15. The Secretary's motion is a motion to dismiss or in the alternative for summary judgment. The court will treat it as the latter as we examine material outside of the pleadings. *See* Fed.R.Civ.P. 12(b).

**(C) Failure to meet January 1, 1993 deadline**

If, by January 1, 1993, a State (or where applicable, a compact region) in which low-level radioactive waste is generated is unable to *provide for the disposal of* all such waste generated within such State or compact region—

. . . .

. . . . If a State (or where applicable, a compact region) in which low-level radioactive waste is generated provides for the disposal of such waste at any time after January 1, 1993 and prior to January 1, 1996, such state (or where applicable, compact region) shall be paid in accordance with subparagraph (D) a lump sum amount equal to twenty-five per centum of any amount collected by a State under paragraph (1): *provided, however,* That such payment shall be adjusted to reflect the remaining number of months between January 1, 1993 and January 1, 1996 for which such State (or where applicable, compact region) provides for the disposal of such waste. . . .

**(D) Recipients of payments**

The payments described in subparagraphs (B) and (C) shall be paid within thirty days after the applicable date—

(i) if the State in which such waste is not a member of a compact region, to such state;

(ii) if the State in which such waste originated is a member of the compact region, to the compact commission serving such State. . . .

The Secretary has interpreted the phrase "provide for the disposal of" in paragraphs (B) and (C) above, to mean provide for the *entire three year period* between January 1, 1993 and January 1, 1996. In other words, if a state or compact enters into a contract for LLW disposal from 1993 to 1996 that is *less than* three years in duration, then that entity is entitled to only a pro rata share of the rebate, proportional to the time period covered in the contract.[11] *See* defendant's brief (Document 9) at p. 6, *citing* 59 Fed.Reg. 15188, 15190 (March 31, 1994):

As the Secretary found, this provision indicates that each non-sited state or compact region is under a continuing duty to provide for the disposal of all of its LLRW during the entire 3 year period between January 1, 1993, and January 1, 1996. 59 Fed.Reg. at 15191. It also provides a basis for pro rata payments because it indicates that payments to a state or compact "shall be adjusted to reflect the remaining number of months between January 1, 1993 and January 1, 1996 for which such State provides for the disposal of such waste." 42 U.S.C. § 2021e(d)(2)(C).

The Secretary also cites a slip opinion (now published) from the Central District of Illinois, which upheld the Secretary's interpretation as "entirely reasonable". *Central Midwest Interstate Low–Level Radioactive Waste Commission v. O'Leary,* 858 F.Supp. 114, 118 (C.D.Ill.1994).

The Commission contends that the Secretary's interpretation belies the plain language of the statute. Specifically, it suggests that the durational requirement read by the Secretary was a "spurious temporal condition", not present in the Act or intended by Congress. *See* plaintiff's brief (Document 16) at pp. 4–5:

Under the plain language of the Act, compliance with the milestone is measured as of January 1, 1993, and is not affected by subsequent events. The Secretary concedes that, as of January 1, 1993, the Commission provided for the disposal of all LLW generated in the Appalachian region by having a contract with a region that had an LLW disposal site. Secretary's Memorandum, p. 2. Therefore, the Commission satisfied all of the express conditions of the milestone and the Secretary was required to pay all of the escrowed Appalachian region surcharges to the Commission on or before January 31, 1993.

The Secretary argues, however, that fulfilling the express conditions of the milestone was not enough. . . .

---

11. For example, a state or compact with an eighteen-month contract with a disposal facility would be entitled to one half rebate. A compact with a one year contract would be entitled to one third rebate, etc.

The Court should reject the Secretary's "interpretation". The language of the Act is clear. The Court cannot impose a spurious temporal condition under color of "statutory interpretation".

*Standard of Judicial Review of Agency Decisions*

■ When a court reviews an agency's construction of the statute which it administers, it must first determine if Congress has directly spoken to the precise question at issue. *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843–845, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If the intent of Congress is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id. See Good Samaritan Hosp. v. Shalala,* 508 U.S. 402, 409, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993) ("The starting point in interpreting a statute is its language.")

■ If the court finds that Congress has been silent on the issue, or if its intent is unclear or ambiguous, it must then determine if the interpretation of the agency is a "permissible construction":

> If, however, the court determines that Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron* at 843–844, 104 S.Ct. at 2781–82, *citations omitted.*

■ In determining whether or not an agency interpretation is permissible, the court will ascertain if its position was "reasonable" as defined by the Supreme Court, *see Chevron* at 844, 104 S.Ct. at 2782–83. We will also take into consideration various factors such as the contemporaneousness and consistency of the agency's position, and whether or not the agency adhered to procedural and substantive directives mandated by Congress in the Administrative Procedure Act and the statute the agency was designated to administer.

*Plain Language of the Act*

The explicit language of the Act does not support the Secretary's position. Nowhere in the statute is there a direct or even implicit requirement that a state or compact have a three-year contract with a waste disposal facility in order to receive a full rebate of the escrowed funds.

Under the Act, January 1, 1993 is the critical deadline, or "Milestone". If *by* January 1, 1993, a state or compact is able to provide for the disposal of all of their LLW, then it is to receive a full rebate of the escrowed fees. 42 U.S.C. § 2021e(d)(2)(B)(iv). There is no mention of a pro rata reduction in this section, nor is there an indication that the language, "provide for the disposal of" means to have a contract with a duration stretching over the entire 1993–1996 period. The year 1996 is not even included in section 2021(e)(2)(B)(iv).

The "downward adjustment" discussed by the defendant only arises if the state or compact has *failed* to meet the January 1, 1993 Milestone deadline, by not entering into a disposal contract by that date. § 2021e(d)(2)(C). In that case, that entity will receive partial credit for the "remaining" time between contract formation and January 1, 1996. *See supra,* pp. 10–11.

Granting that the pertinent language of the Act could be more explicit, it is clear to the court that the use of the word "remaining" and the present tense usage of "provides", refers to the amount of time *left after* the state or compact region contracts for disposal of waste. The entity is to receive credit for this remaining time. The statute cannot be read, as the Secretary argues, to impose a three-year durational requirement on a LLW disposal contract formed by a compact before the 1993 Milestone.[12] Ac-

---

**12.** However, we also do not find that Congress has explicitly spoken in opposition to the Secretary's interpretation, as argued by the Commission. The section providing that the Secretary

cordingly, we do not follow the Illinois district court which found the DOE's interpretation "entirely reasonable".[13]

*DOE Interpretation*

Now that the court has found that Congress has not explicitly provided for the three-year requirement, we must determine if the Secretary's construction of the statute was "permissive", as discussed above. *See Chevron, supra,* 467 U.S. at 843–844, 104 S.Ct. at 2781–82.

On September 30, 1992, the Secretary published a, "Notice of Eligibility Criteria and Procedures", 57 Fed.Reg. 45248 (September 30, 1992). In this notice, the Secretary stated the following:

**II. Rebate Eligibility Criteria for Surcharge Rebates**

**A. Criteria a State or Compact Region Should Meet**

1. A state or compact region should provide documentation of the January 1, 1993 availability of one or a combination of the following options:

a. An operating disposal or storage facility for all LLW....

b. *A valid contract with another State or compact region for the disposal or storage of all LLW.*

c. If a State or compact region cannot provide for the disposal or storage of LLW under the above options by January 1, 1993, it may be eligible for a prorated (sic.) portion of the rebate surcharges before January 1, 1996, if it can provide documentation of the availability of one or a combination of:

....

No mention of the pro rata rebate is included in this 1992 notice. On December 1, 1992, the Commission executed the Southeast Con-

tract with the South Carolina facility, allegedly in reliance on this notice.[14]

On March 31, 1994, the Secretary published the "Notice of Response to Comments on Draft Policies and Procedures and Final Policies and Procedures," which as outlined above, interpreted the language, "provide for the disposal of" in § 2021e(d)(2)(C) of the Act, as meaning, provide for the disposal of waste for the "entire thirty-six month period". *See* 59 Fed.Reg. at 15191 (the "1994 Notice").

*Findings of the Court*

Initially, we recognize that the agency's interpretation is entitled to lessened deference, as its position has not been consistent. Although the Secretary is not estopped from changing a view she believes to have been grounded upon a mistaken legal interpretation, *see Good Samaritan, supra,* 508 U.S. at 416–18, 113 S.Ct. at 2161,[15] the consistency of an agency's position is "a factor" in assessing the weight that position is due: "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view." *Id.,* quoting, *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987). *Also see, Pennsylvania Medical Society v. Snider,* 29 F.3d 886, 902 (3d Cir.1994).

The Secretary maintains that her position has been consistent because the interpretation "is consistent with the statutory language of the Act."[16] However, as the court has already concluded, the policy in the 1994 Notice was not indicated in the plain language of the Act. Nor was the issuance of the 1994 Notice contemporaneous with the Acts' enactment, and this, too is a matter for

---

will make payment within thirty days does not in itself sanction the "snapshot" approach discussed by the Commission. *See* 2021e(d)(2)(D).

**13.** We note that the three-year "monitoring period" discussed by the district court in *Central Midwest* to support the DOE's interpretation was contained in 42 U.S.C. § 2021e(d)(2)(C), the section which comes into play *only if* the state has failed to meet the January 1, 1993 Milestone.

**14.** *See* plaintiff's brief (Document 16) at p. 2 n. 4.

**15.** "Indeed, an administrative agency is not disqualified from changing its mind; and when it does the courts still sit in review of the administrative decision and should not approach the statutory construction issue *de novo* and without regard". *Id.,* quoting, *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 180–83, 77 S.Ct. 707, 707–09, 1 L.Ed.2d 746 (1957).

**16.** Defendant's brief (Document 9) at p. 11.

consideration. *See Good Samaritan, supra,* 508 U.S. at 413–15, 113 S.Ct. at 2159; *Davis v. United States,* 495 U.S. 472, 484, 110 S.Ct. 2014, 2022, 109 L.Ed.2d 457 (1990).

Secondly, notwithstanding the lessened deference owed to the Secretary's interpretation, the court finds the agency's position to be procedurally invalid, as (1) it failed to comply with proper "notice and comment" procedures set forth in the Administrative Procedure Act, 5 U.S.C. § 500, *et seq.;* and (2) because the 1994 Notice is an example of retroactive rule making.

As discussed above, the March 31, 1994 Notice issued by the DOE was an original statement, not contained in any prior public notice.[17] As such, it was subject to the notice and comment provision of the Administrative Procedure Act (APA), 5 U.S.C. § 552(a)(1). Under this section, the agency must publish in the Federal Register for public comment any policy, rule, procedure, or the like, as well as any amendment, thereto. Failure to do so will void the provision as to a person [18] who has not received such notice.[19] On December 1, 1992, when the Commission executed the Southeast Contract, it had no notice of the three year durational requirement outlined in the 1994 Notice. Thus, under § 552(a) of APA, the Commission cannot be held responsible for its terms.

 In addition, the court finds that the attempt of the DOE to apply a policy (or "interpretation") rendered in 1994 upon a contract formed in 1992, an improper instance of retroactive rule making.[20] See *Bowen v. Georgetown,* 488 U.S. 204, 209, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) *(citations omitted )*:

Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless the power is conveyed by Congress in express terms.

*See also, Landgraf v. USI Film Products,* 511 U.S. 244, ——–——, 114 S.Ct. 1483, 1500–01, 128 L.Ed.2d 229 (1994). In the Act, Congress did not explicitly provide the DOE with retroactive rule making power,[21] and the court will not permit as much today. Accordingly the Secretary's construction of the Act in this instance is neither persuasive nor reasonable.

For these reasons, the court will grant summary judgment in favor of the plaintiff, will deny defendant's motion for summary judgment and will grant the petition for writ of mandamus, pursuant to 28 U.S.C. § 1361. The Secretary is ordered to rebate to the Commission the remaining escrowed surcharge withheld under 42 U.S.C. § 2021e *et seq.,* plus appropriate interest accrued.

---

**17.** *See* 59 Fed.Reg. at 15190 (emphasis added): "For reasons stated below, DOE *is providing notice* that a contractual arrangement such as the Southeast Compact Commission standard contract...."

**18.** "Person" under the APA, "includes an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). The Commission is therefore included in this definition.

**19.** *See* Section 552(a)(1): "Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner

be required to resort to or be adversely affected by, a matter required to be published in the Federal Register and not so published."

**20.** The 1994 Notice is a "rule" under the APA as it is a statement, "designed to implement, interpret, or prescribe law or policy....", 5 U.S.C. § 551(4). Similarly, the issuance of the 1994 Notice would be "rule making" as it was, "agency process for formulating, amending, or repealing a rule", § 551(5).

**21.** In fact, the Act does not specifically provide the DOE with *any* rule making authority.