MIDWEST INTERSTATE LOW–
LEVEL RADIOACTIVE WASTE
COMMISSION, Plaintiff,

v.

The Honorable Hazel O'LEARY,
Secretary of Energy,
Defendant.

Civil No. 4–95–773.

United States District Court,
D. Minnesota,
Fourth Division.

May 28, 1996.

Richard Ihrig, Sarah D. Halvorson, Lindquist & Vennum, Minneapolis, MN, for plaintiff.

Mary Jo Madigan, U.S. Atty. Office, Minneapolis, MN, Thomas W. Millet, U.S. Dept. of Justice, Washington, DC, L. Dow Davis, Washington, DC, Marcia K. Sowles, U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

TUNHEIM, District Judge.

### INTRODUCTION

For a six-month period, the Midwest Interstate Low–Level Radioactive Waste Commission ("Midwest Commission") provided for disposal of low level radioactive waste generated within the Midwest only by allowing generators to contract for disposal with a facility outside the region. The Honorable Hazel O'Leary, the Secretary of Energy ("Secretary"), decided that this did not fulfill the Midwest Commission's responsibility under the Low Level Radioactive Waste Policy Amendments Act of 1985 ("LLRWPAA") to provide for the disposal of this radioactive waste. 42 U.S.C. § 2021e(d)(2)(B)(iv). Consequently, the Secretary withheld surcharge rebates to which the Midwest Commission would otherwise be entitled. The Midwest Commission brought this suit, challenging the Secretary's decision and seeking the payment of the surcharge rebates.

The matter came before the Court for a hearing on March 8, 1996 on cross-motions

for summary judgment. Since the facts are not in dispute, the case squarely presents a novel question of the interpretation of 42 U.S.C. § 2021e(d)(2)(B)(iv): can the Midwest Commission meet its obligation to provide for radioactive waste disposal merely by permitting generators to contract with disposal facilities outside of the region? The Court views the interpretation of the Secretary as correct, and certainly as reasonable. Since a reasonable interpretation of the Secretary is entitled to deference, the Court grants the defendant's motion for summary judgment and denies plaintiff's motion.

## LEGAL BACKGROUND

Congress enacted the Low–Level Radioactive Waste Policy Act of 1980 (the 1980 Act) to ensure adequate facilities for safe disposal of the nation's low-level radioactive waste in the face of the decreasing availability of disposal facilities. Half of the six commercial disposal facilities in the United States closed between 1975 and 1979, and in 1979 the three states which still had facilities either closed them temporarily or reduced the amount of waste allowed to be accepted for disposal. H.R.Rep. No. 99–314, 99th Cong. 1st Sess., Pt. 2 (1985) *reprinted in* 1985 U.S.C.C.A.N. 3002.

The 1980 Act declared a federal policy of holding each state responsible for providing for the availability of disposal capacity either within or outside of the state, and it encouraged the states to enter into regional compacts, which must be ratified by Congress. The Midwest Commission is one of these regional compact commissions. The 1980 Act provided that each regional compact commission would have the authority, beginning in 1986, to restrict the use of disposal facilities located within the region to the disposal of waste generated within the region. This is a critical aspect of the 1980 Act because, without it, the dormant Commerce Clause prevents a state from keeping out waste generated elsewhere. *Chemical Waste Management v. Hunt,* 504 U.S. 334, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992); *City of Philadelphia v. New Jersey,* 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

By 1985 seven regions had submitted compacts to Congress for ratification, but the only operational disposal facilities were in the regions that included the three states that had such facilities prior to 1980. Congress did not ratify the compacts, because to do so would have enabled the three compacts with facilities to exclude waste from other regions. Instead, Congress enacted the Low–Level Radioactive Waste Policy Amendments Act of 1985, 42 U.S.C. §§ 2021b, *et. seq.*

This Act required states with operating facilities ("sited states") to accept waste from other states until the end of 1992, but it also allowed the sited states to assess surcharges on generators of waste from unsited states. A quarter of these surcharges was transferred into an escrow account held by the Secretary of Energy. These funds, with interest, became available to states and compact regions that met certain milestones toward providing for disposal of their low-level radioactive waste.

The culminating milestone is the subject of this litigation. The Secretary is required to pay surcharge rebates to any compact region which, by January 1, 1993 "is able to provide for the disposal of all low-level radioactive waste generated within such ... compact region." 42 U.S.C. § 2021e(d)(2)(B)(iv). A region which complies with this milestone for a portion of the three-year period beginning in 1993 is entitled to a pro-rata share of the rebate. 42 U.S.C. § 2021e(d)(2)(C). Any surcharge rebates for this last milestone that are not paid to the states are to be paid to the generators of the waste that originally paid the surcharges.

In 1994, the Department of Energy published a notice setting forth its final policies and procedures on the surcharge rebates for the 1993 deadline. 59 Fed.Reg. 15,188 (1994). This notice explained that to receive a full rebate, a compact region should provide documentation that on January 1, 1993 it either: (1) had an operating facility for low-level radioactive waste, (2) elected to take title, take possession and assume liability for such waste, or (3) had a contract with another state or compact region for at least the three-year period following January 1, 1993. The notice also provided for a prorated portion of the rebate for any compact that met

those conditions for a portion of that three-year period.

## FACTS

The states of Indiana, Iowa, Michigan, Minnesota, Missouri, Ohio, and Wisconsin formed the Midwest Commission and obtained ratification in 1986. The Midwest Commission achieved the first three statutory milestones and received surcharge rebates. The Commission did not have an operating low-level radioactive waste disposal facility by January 1, 1993, so it contracted with the Southeast Compact Commission to make the South Carolina "Barnwell" facility available to Midwestern waste generators, who signed individual contracts with the operator of that facility, Chem–Nuclear Systems, Inc. This constituted compliance with the milestone, and the Secretary paid the Midwest Commission the surcharge rebates.[1]

After 18 months of this arrangement, the Southeast Compact Commission closed Barnwell. For the following year, Midwest generators had no access to a disposal facility. The parties agree that the Midwest Commission was not entitled to surcharge rebates for this period.

For the last six months of 1995, the state of South Carolina withdrew from the Southeast Compact Commission and reopened Barnwell to waste generators from outside the region. The Midwest Commission again allowed its generators to export their waste and contracted with Chem–Nuclear for disposal at Barnwell. The Midwest Commission did not sign a contract with the state of South Carolina guaranteeing access. Rather, it relied upon the dormant Commerce Clause, which prohibits discrimination against out-of-state waste generators.[2]

The Midwest Commission then requested that the Secretary pay the surcharge rebates for this last six-month period. The Secretary refused on the grounds that the Midwest Commission had not provided for dis-

posal by operating a facility or contracting with a state. This lawsuit ensued.

## ANALYSIS

In their cross-motions for summary judgment, both parties assert that the facts are not in dispute and this case is ready for judgment as a matter of law. Neither party has claimed that any other court has ever faced the particular legal issue now presented. Thus, the issue before the Court is a novel legal question.

■ In interpreting statutes, the Court begins by examining the plain meaning of the statutory language. Words that are not defined in a statute are accorded their ordinary or natural meaning. *Smith v. United States,* 508 U.S. 223, 225, 113 S.Ct. 2050, 2053, 124 L.Ed.2d 138 (1993). Viewed from this perspective, the key question in this case is the meaning of the phrase "to provide for the disposal." 42 U.S.C. § 2021e(d)(2)(B)(iv). The Secretary, citing Black's Law Dictionary, argues that "provide" means to make, procure, furnish for future use, prepare, or supply. The Midwest Commission cites Webster's Dictionary, 9th Edition, and asserts that "provide" means to furnish, supply, make ready, prepare, make available, afford or set down as a stipulation.

The Midwest Commission argues that is has provided for the availability of disposal for midwestern low-level radioactive waste by furnishing, supplying, or making available the disposal facility in Barnwell, South Carolina. This argument strains the ordinary and natural meaning of these terms, since the Midwest Commission has merely permitted disposal in South Carolina. The Secretary's argument that "provide" does not mean "permit" is much more firmly rooted in an ordinary and natural meaning of the key terms.

The Midwest Commission argues that the Department of Energy's Policy Statement of March 31, 1994, supports a broader interpretation of the statute. That notice stated:

---

**1.** The Secretary's determination that such a contract entitles a state or compact region to surcharge rebates was upheld in *Central Midwest Interstate Low–Level Radioactive Waste Comm. v. O'Leary,* 858 F.Supp. 114 (C.D.Ill.1994).

**2.** The dormant Commerce Clause applied to South Carolina again because that state withdrew from the Southeast Commission and thereby waived its right under the LLRWPAA to exclude waste from outside the region.

[A state or compact commission] will be eligible for a prorated portion of the rebate surcharges before January 1, 1996, if it can provide documentation of the availability of one or a combination of:

a. A subsequent operating disposal facility for low-level waste for which the State has responsibility under the Act.

b. A contract with another State compact region providing access to a low-level waste disposal facility for the low-level waste as to which the State has responsibility under the Act for a period between January 1, 1993 and January 1, 1996, the end of the surcharge rebate period.

The Midwest Commission maintains that it has complied with the first alternative by making the Barnwell facility available for waste from the Midwest. The Secretary claims that this condition could only be met if the Midwest Commission operated a facility in the Midwest. The Secretary argues that the term "responsibility" refers to a facility for which the state is responsible; the Midwest Commission asserts that this refers only to waste for which it is responsible. The Secretary points out that this would make the condition b.—having a contract— completely superfluous. The Midwest Commission responds that this is so only because the Secretary did not, at the time it issued the Policy Statement, conceive of the possibility that South Carolina would withdraw from the Southeast Compact Commission and become available to out-of-state generators without the need for a contract between states.

The Secretary's interpretation is the more logical. It sets forth two clear options for states: operate a facility or contract with a state that does so. The Midwest Commission's construction of the first option is so broad as to make the rest of the Policy Statement unnecessary. This would violate the cannon of construction that effect should be given to every phrase or sentence. *In re Bellanca Aircraft,* 850 F.2d 1275, 1280 (8th Cir.1988).

The best argument the Midwest Commission can muster for its construction of both the statute and Policy Statement is that there is no longer a need for a contract with South Carolina, since the dormant Commerce Clause guarantees access of out-of-state generators to Barnwell now that South Carolina has withdrawn from the Southeast Compact Commission. The problem with this contention is that it would leave the Midwestern generators in the same position as they were in before Congress enacted the LLRWPAA. Before the Act, generators could dispose of waste in any facility that was open, but states could elect to close their facilities. Similarly, states could limit the total amount of waste accepted for disposal in a facility, as long as they acted without discrimination against out-of-state waste. This situation led to a crisis—states that had facilities limited access, closed them temporarily, or permanently shut them down. The whole purpose of the LLRWPAA is to create a system more rational and dependable than what developed under the dormant Commerce Clause. The Midwest Commission asks the Court to interpret the LLRWPAA so as to reward states that do no more than return to the dormant Commerce Clause regime. This would be contrary to the purpose of the statute.

■  Finally, the Court must give considerable weight to the interpretation of the Secretary regarding any ambiguity in the statute she administers as well as the regulations she issues. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). To the extent that the LLRWPAA and Policy Statement are ambiguous, the Secretary's interpretation is certainly "based on a permissible construction." *Id.* This principle provides an additional reason to uphold the Secretary's determination that the Midwest Commission is not entitled to the surcharge rebates for the six-month period at issue.

### ORDER

Accordingly, based on the above and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 6] is **GRANTED** and plaintiff's motion for

summary judgment [Docket No. 10] is **DE-NIED.**

LET JUDGMENT BE ENTERED AC-CORDINGLY.