**Jeffrey D. ARMSTRONG, individually and William Lawrence d/b/a Native American Press/Ojibwe News, Plaintiffs,**

v.

**MILLE LACS COUNTY SHERIFFS DEPARTMENT, Mille Lacs County; Dennis Boser, individually and in his official capacity as Sheriff of Mille Lacs County; Mille Lacs Tribal Police Department; Mille Lacs Band of Chippewa Indians; and Marc R. Gabinger, individually, Defendants.**

No. CIV. 98–2658 RLE.

United States District Court,
D. Minnesota.

Aug. 2, 2000.

Ronald H. Usem, Craig D. Greenberg, Huffman Usem Saboe & Crawford, Minne-

apolis, MN, for Jeffrey D. Armstrong, William Lawrence.

Roger Lee Rowlette, Jenell M. Matthews, Johnson & Lindberg, Minneapolis, MN, for Mille Lacs County Sheriffs Dept., Mille Lacs, County, Dennis Boser.

Joseph B. Marshall, Marshall & Assoc., Circle Pines, MN, for Mille Lacs Tribal Police Dept., Mille Lacs Band of Chippewa Indians.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, made in accordance with the provisions of Title 28 U.S.C. § 636(c), upon the Motion of the Defendants Mille Lacs Tribal Police Department, Mille Lacs Band of Chippewa Indians, and Marc R. Gabinger (hereinafter the "Mille Lacs Defendants"), to Stay All Proceedings Pending an Adjudication of Matters of Tribal Law.

A Hearing on the Motion was conducted on December 23, 1999, at which time, the Plaintiffs appeared by Craig D. Greenberg, Esq.; the Mille Lacs Defendants appeared by Joseph B. Marshall, Esq.; and the Defendants Mille Lacs County Sheriffs Department, and Dennis Boser

(hereinafter the "County Defendants"), appeared by Roger L. Rowlette, Esq.

For reasons which follow, we grant the Mille Lacs Defendants' Motion to Stay.[1]

### II. *Factual and Procedural Background*

This action arises from a criminal arrest for trespassing, in violation of Minnesota Statutes Section 609.605,[2] which occurred on premises, that were within the boundaries of the Mille Lacs Indian Reservation, and just outside a hotel meeting room that had been rented, by the Minnesota Chippewa Tribe ("MCT"), for the purpose of conducting a Tribal Executive Meeting. The underlying facts are not seriously in dispute.

On October 22, 1997, the MCT Executive Committee scheduled a meeting in a room at the Grand Casino Mille Lacs Hotel, which is located in Garrison, Minnesota, on Indian land. The Executive Committee is a twelve-member council which serves as the governing body of the MCT. At one point in the Executive Committee's proceedings, Norman Deschampe ("Deschampe"), who serves as the Chairperson of the Executive Committee, requested all non-Indian persons to leave the meeting, in order that the Executive Committee could discuss matters pertaining to the settlement of a legal action, in which the MCT and the United States Government were then involved. The Plaintiff Jeffrey D. Armstrong ("Armstrong") is a reporter, who was employed by the Native Ameri-

---

1. In addition, the District Court, the Honorable Richard H. Kyle presiding, referred the Defendants' Motions for Summary Judgment to this Court, following which, the parties consented to this Court's jurisdiction over the action. Given our determination, that this action should be stayed until the Tribal Court has an opportunity to exhaust its jurisdiction over the dispute presented, the Motions for Summary Judgment are denied as premature.

   Similarly, the Stay we impose would defer a further consideration of the Plaintiffs' claims against the County Defendants, in order to remove the potential for conflicting determinations—one as to one set of Defendants, as opposed to the other—based upon the forum in which the claims should be

considered, as well as considerations of judicial economy. Indeed, given the interdependence of the Plaintiffs' claims against the Defendants, the Plaintiffs may well elect to submit all of the claims to the Tribal Court, if the Tribal Court should find subject matter jurisdiction over the issues presented.

2. In pertinent part, Section 609.605, Subdivision 1(b)(3), provides as follows:

   (b) A person is guilty of a misdemeanor if the person intentionally:

   \* \* \* \* \* \*

   (3) trespasses on the premises of another and, without claim of right, refuses to depart from the premises on demand of the lawful possessor \* \* \*.

can Press/Ojibwe News, and who was in attendance at the Executive Committee's meeting.

According to Armstrong, prior to the commencement of the meeting, he was questioned by Deschampe as to whether he was an "Indian." Armstrong responded that his racial origin was none of Deschampe's business, that Deschampe knew who he was, and that he was merely performing his job as a newspaper reporter. As related by Armstrong, at no time did Deschampe explain why he was asking these questions of Armstrong, or his purpose in calling the meeting of the Executive Committee. Armstrong also contends that Deschampe admitted that he knew of no tribal authority, including the tribal constitution, which allowed the Executive Committee to ban anyone from its meeting.

The Defendant Marc R. Gabinger ("Gabinger"), who is an officer with the Mille Lacs Tribal Police Department, then informed Armstrong that, if he did not immediately leave the meeting room, he would be arrested and removed. When Armstrong made no attempt to leave the room, Gabinger effected the arrest, and escorted Armstrong into the hotel lobby. Apparently, Armstrong voluntarily left with Gabinger, never raised his voice, and did not exhibit any hostility toward Gabinger, or anyone else. When in the hotel lobby, Gabinger frisked Armstrong, and handcuffed him in the presence of a number of persons who were also in the lobby. Armstrong was then escorted to Gabinger's squad car, and was driven thirty-four miles to the Mille Lacs County Sheriff's Department, in Milaca, Minnesota, where he was detained in the Mille Lacs County Jail on charges of trespass. Consistent with Gabinger's instruction, Armstrong

was incarcerated at the Jail for a period of about four hours, until the Executive Meeting had adjourned, at which time he was released.

Armstrong contends that he had been scheduled for a Court appearance, but that appearance was cancelled after Armstrong was informed that he would be released at approximately 2:00 o'clock p.m. Armstrong maintains that he was denied the opportunity to make a phone call during the time that he was detained at the Mille Lacs County Jail. Ultimately, Mille Lacs County charged Armstrong with misdemeanor trespass, but the charges were later dropped by Order of the State District Court.

Along with his employer—the Plaintiff William Lawrence d/b/a Native American Press/Ojibwe News ("Lawrence")—Armstrong commenced this action on December 16, 1998, alleging a deprivation of his constitutional rights—namely, those secured to him by the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution—in violation of Title 42 U.S.C. § 1983, and he also asserts a claim of defamation. In their Answer to the Plaintiffs' Complaint, the Mille Lacs Defendants deny any wrongdoing, and affirmatively allege that the Court is without the requisite subject matter jurisdiction to hear the Plaintiffs' claims.

In their Motion to Stay, the Mille Lacs Defendants contend that this action should be stayed until the Plaintiffs have exhausted their Tribal Court remedies, since their alleged wrongdoings are alleged to have occurred, in part, while they were exercising their Tribal authority on Reservation lands. In contrast, the Plaintiffs contend that, by virtue of the provisions of Minnesota Statutes Section 626.90,[3] the Mille

---

3. According the Plaintiffs, the Mille Lacs Defendants, and Mille Lacs County, commenced law enforcement operations under Minnesota Statutes Section 626.90(2), which provides express preconditions for the Mille Lacs Band's law enforcement activities, as follows:

(1) the band agrees to be subject to liability for its torts and those of its officers, employees, and agents acting within the scope of their employment of duties arising out of a law enforcement agency function conferred by this section, to the same extent as a municipality under chapter 466, and the

Lacs Defendants were exercising State authority, for which they had expressly waived their otherwise available sovereign immunity, thereby rendering them answerable in Federal Court. The County Defendants take no position on the Motion, other than to request that, if granted, the proceedings also be stayed, for purposes of judicial economy, as to the Plaintiffs' claims against them.

### III. *Discussion*

■ A. *Standard of Review.* As a Federal District Court, we have the inherent power to stay the proceedings of an action, so as to control our docket, to conserve judicial resources, and to provide for the just determination of cases which pend before us. *Landis v. American Water Works & Electric Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936); see also, *Lunde v. Helms*, 898 F.2d 1343, 1345 (8th Cir.1990), cert. denied, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 208 (1990); *Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803, 808 (8th Cir.1986); *City of Bismarck v. Toltz, King, Duvall, Anderson and Associates, Inc.*, 767 F.2d 429, 433 (8th Cir.

band further agrees, notwithstanding section 16C.05, subdivision 7, to waive its sovereign immunity for purposes of claims of this liability;
(2) the band files with the board of peace officer standards and training a bond or certificate of insurance for liability coverage for the maximum amounts set forth in section 466.04;
(3) the band files with the board of peace officer standards and training a certificate of insurance for liability of its law enforcement officers, employees, and agents for law-suits under the United States Constitution; and
(4) the band agrees to be subject to section 13.82 and any other laws of the state relating to data practices of law enforcement agencies.
Minnesota Statutes Section 626.90(2)(b) further provides:
(b) The band shall enter into mutual aid/cooperative agreements with the Mille Lacs county sheriff under section 471.59 to define and regulate the provision of law enforcement services under this section. The agreements must define the trust property involved in the joint powers agreement.

1985); *Contracting Northwest, Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir.1983). Here, we believe that deference to tribal self-government commends a granting of the requested stay.

In *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 852, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), the Supreme Court determined that, "[t]he question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331." The Court went on to explain:

[T]he existence and extent of a tribal court's jurisdiction [over non-Indians] will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.

The Plaintiffs also note that the parties entered into a formal cooperative agreement, under Section 626.90, on August 7, 1991. This agreement was amended on July 1, 1998, to read as follows:
The Mille Lacs Band of Chippewa Indians agrees to be subject to liability for its torts and those of its officers, employees, and agents acting within the scope of their employment or duties arising out of a law enforcement agency function, to the same extent as a municipality under chapter 466 of Minnesota Statutes, and the band further agrees, notwithstanding Minn.Stat. § 16B.06, Subdivision 6, to waive its sovereign immunity for the purposes of claims of this liability.
The waiver of sovereign immunity does not apply to claims brought by employees of the Band, against the Band as an employer, arising out of the employment policies or practices of the Band, including, but not limited to, claims due to demotion, selection, dismissal, and failure to promote.
*Affidavit of Craig D. Greenberg, Ex. D, at 4.*

We believe that examination should be conducted in the first instance in the Tribal Court itself.

*Id.* at 855–56, 105 S.Ct. 2447.

The Court predicated its deferral of such issues, to the Tribal Courts, on the following considerations:

Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge. Moreover the orderly administration of justice in federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of the kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*Id.* at 856–57, 105 S.Ct. 2447.

*National Farmers* involved a claim that invoked the Federal question jurisdiction of the Court but, subsequently, the Court extended the holding, in that case, to claims arising under the Court's diversity of citizenship jurisdiction. See, *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). In so holding, the Court concluded:

Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. * * * Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute.

*Id.* at 18, 107 S.Ct. 971.

■ Accordingly, a rule of "tribal exhaustion" has evolved, such that a Federal District Court should defer matters, which are venued in a Tribal Court, to that forum for purposes of determining whether that forum has jurisdiction to consider the matter on its merits.

"This rule of tribal court exhaustion is subject to a narrow set of exceptions, including: (1) "where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith"; (2) "where the action in tribal courts is patently violative of express jurisdictional prohibitions"; or (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the tribal court's jurisdiction."" *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1501 (10th Cir.1997), quoting *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, supra at 857 n. 21, 105 S.Ct. 2447. Of course, where Congress has entrusted a particular cause of action to the exclusive jurisdiction of the Federal Courts, then the Court need not defer to a Tribal Court, in that instance, to determine its jurisdiction to resolve the merits of the claim. See, *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484 n. 7, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) ("The situation here is the rare one in which statutory provisions for conversion of state claims to federal ones and removal to federal courts express congressional preference for a federal forum.").

As our Court of Appeals noted recently, "the Supreme Court recognizes the federal government's long-standing policy of encouraging tribal self-government." *Douglas F. Longie, Honorable v. Myra Pearson*, 210 F.3d 379, 2000 WL 427630 *1 (8th Cir., April 21, 2000) [Table Decision], citing *Duncan Energy v. Three Affiliated Tribes*, 27 F.3d 1294, 1299 (8th Cir.1994), cert. denied, 513 U.S. 1103, 115 S.Ct. 779, 130

L.Ed.2d 673 (1995); see also, *Iowa Mut. Ins. Co. v. LaPlante*, supra at 14–15, 107 S.Ct. 971 (tribal courts play vital role in tribal self-government and federal government has consistently encouraged their development); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 138 n. 5, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982) (through laws governing Indian tribes, Congress has expressed purpose of "fostering tribal self-government"); *Alva Rose Hall v. Bruce Babbitt, et. al.*, 208 F.3d 218, 2000 WL 268485 (8th Cir., March 10, 2000) [Table Decision].

"Civil jurisdiction over tribal-related activities presumptively lies in tribal courts unless a specific treaty provision or federal statute affirmatively limits the jurisdiction." *Alva Rose Hall v. Bruce Babbitt, et al.*, supra at *2, citing *Iowa Mut. Ins. Co. v. LaPlante*, supra at 18, 107 S.Ct. 971; *Duncan Energy v. Three Affiliated Tribes*, supra at 1299 (the deference Federal Courts afford Tribal Courts concerning tribal-related activities is rooted in Supreme Court precedent); see also, *Honorable Douglas F. Longie v. Myra Pearson, et al.*, supra 2000 WL at 2; *Prescott v. Little Six, Inc.*, 897 F.Supp. 1217, 1221 (D.Minn.1995).

"The Supreme Court and the Eighth Circuit have repeatedly emphasized that tribal courts play a 'vital role' in tribal self-governance, and that 'because a federal court's exercise of jurisdiction over matters relating to reservation affairs can impair the authority of tribal courts, as a matter of comity, the examination of tribal sovereignty and jurisdiction should be conducted in the first instance by the tribal court itself.'" *Prescott v. Little Six, Inc.*, supra at 1221, citing *Duncan Energy v. Three Affiliated Tribes*, supra at 1299, citing, in turn, *National Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). This exhaustion requirement requires parties to exhaust Tribal Court remedies before a Federal Court will consider relief in a civil case involving tribal-related activities on reservation land. *Alva Rose Hall v. Bruce Babbitt, et al.*, supra at *3 (This is true, "because when a federal court exercises jurisdiction over matters relating to reservation affairs, it can impair the authority of tribal courts."), citing *Iowa Mut. Ins. Co. v. LaPlante*, supra at 15, 107 S.Ct. 971; *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, supra at 856–57, 105 S.Ct. 2447 (District Court could not assert jurisdiction over case for acts occurring on reservation until Tribal Court was first given opportunity to determine its jurisdiction to hear case).

As our Court of Appeals explained, in *Davis v. The Mille Lacs Band of Chippewa*, 26 F.Supp.2d 1175, 1178 (D.Minn. 1998), aff'd, 193 F.3d 990 (8th Cir.1999):

"[C]onsiderations of comity direct that tribal remedies be exhausted before the question [of tribal court jurisdiction] is addressed by the District Court." *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. at 15, 107 S.Ct. 971. The exhaustion requirement encourages the Federal Government's policy of tribal self-government, ensures that "a full record is developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed," and provides an opportunity for the tribal court system to explain its basis for asserting jurisdiction. See, *Duncan Energy*, 27 F.3d at 1299–1300. Once tribal remedies are exhausted, a federal court may then review the tribal court's decision regarding jurisdiction. If jurisdiction was proper in the tribal court, "proper deference * * * precludes relitigation of issues raised and resolved in the tribal court." *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. at 19, 107 S.Ct. 971.

\*　　\*　　\*　　\*　　\*　　\*

"At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal court." *Iowa Mutual Ins. Co. v.*

*LaPlante,* 480 U.S. at 17, 107 S.Ct. 971. However, a party's failure to exhaust tribal remedies may be excused where:

an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the [tribal] court's jurisdiction.

*National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 856 n. 21, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).

"The exhaustion requirement applies in both diversity and federal question cases." *Prescott v. Little Six, Inc.,* supra at 1221, citing *Iowa Mut. Ins. Co. v. LaPlante,* supra at 16, 107 S.Ct. 971. "Whether proceedings are actually pending in tribal court is not relevant to determining whether exhaustion will be required." *Id.,* citing *Crawford v. Genuine Parts Co.,* 947 F.2d 1405, 1407 (9th Cir.1991), cert. denied, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992).

■ B. *Legal Analysis.* Here, because the Plaintiffs have not attempted to exhaust their Tribal Court remedies, a Stay of this action is required, as it is clear that the Tribal Court should be afforded the opportunity to determine whether it has jurisdiction over the Plaintiffs' claims. This claim involves the purportedly illegal acts of certain members of the Mille Lacs Band of Chippewa Indians ("Band"), which is one of six Minnesota Bands of Chippewa Indians which comprise the Minnesota Chippewa Tribe ("Tribe"). More importantly, these assertedly illegal acts occurred on Tribal lands. The Plaintiffs claim that the acts of the Defendants infringed upon their Federal constitutional, and Minnesota common law rights, arising from Armstrong's removal from reservation property, under the guise of Tribal authority. Properly framed, we are asked whether Tribal Court jurisdiction is properly invoked when a person is arrested, and removed, from Tribal property, by Tribal authorities, and subsequently detained pursuant to a Tribal directive. We are obligated to find, under controlling precedent, that jurisdiction here properly lies with the Tribal Court.[4]

Although the Mille Lacs Tribal Police Department was enforcing Minnesota law, it was doing so because the presence of Armstrong, at a Tribal meeting, was assertedly inappropriate, under resolutions, bylaws, policies, or practices, which have been adopted by the Tribe. It was the Tribe's members who decided that the presence of Armstrong, at the meeting, was inappropriate, not because of any State or Federal authority, but because of the Tribe's inherent authority to govern. Specifically, the authority to exclude Armstrong was predicated on the Tribe's perceived right to exclude nonmembers from a Tribal meeting at which sensitive—perhaps privileged—Tribal information, legal issues, and communications would be disclosed, and discussed. Undoubtedly, the Tribe has a vested interest in preserving the integrity of its privileged legal advices, and in managing the conduct of its Tribal

---

**4.** In his deposition, Lawrence explained the basis for his Complaint, as follows:

I just couldn't understand, knowing that the Minnesota Chippewa Tribe operates under the Roberts' Rules of Order, that the meetings are open, [Armstrong] had been a guest at the meeting, and he had been removed and arrested, and I couldn't come to any other conclusion than it was false arrest and imprisonment. * * * The council of the Minnesota Chippewa Tribe has to bring the meeting to order under the Roberts' Rules of Order and go to executive session, and they can exclude people. But this meeting hadn't been called to order, and so I just think that something strange was going on and it was just they closed it without any real rights to close it.

*Memorandum of Points and Authorities in Support of Motion for Stay, Ex. C.,* at 38–39. Apparently, Lawrence is relying on the *Bylaws of the Minnesota Chippewa Tribe, Article 2, Section 5,* which provides that "[s]even members of the Tribal Executive Committee shall constitute a quorum, and Robert's Rule shall govern its meetings."

proceedings. Whether that interest is advanced by the exclusion of Armstrong, from a Tribal Executive Meeting, is not a matter that we need now decide, for the question before us is solely concerned with the propriety of staying our hand under the Tribal Court may ascertain its jurisdiction, if any, to hear and resolve that substantive issue. Plainly, in our view, comity, and deference to Tribal self-governance, commend the Stay that the Mille Lacs Defendants request, in order that the Tribal Court can address this critical, jurisdictional issue.

The Plaintiffs challenge the authority of the Band to exercise jurisdiction over this dispute for several reasons. First, the Plaintiffs contend that the legislative history, which surrounds Minnesota Statutes Section 626.90, and the related cooperative agreements that were entered by the Tribe, demonstrate that the Tribe agreed to be subject to suit, in non-Tribal Courts and, thereby, dispossessed itself of jurisdiction over civil disputes, so as to assume the status of a governmental municipality when sued by persons making the claims the Plaintiffs have asserted here. In addition, the Plaintiffs argue that, under this legislative scheme, the Tribe is precluded from enforcing Tribal laws against nonmembers. We have no occasion, here, to either agree or disagree with these contentions.

Our review of the issue before us is prudential, and not jurisdictional. *Iowa Mutual Ins. Co. v. LaPlante,* supra at 16 n. 8, 107 S.Ct. 971 ("Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite."). Here, the Tribe does not contend that it is immune from the Plaintiffs' suit, either by way of sovereign immunity, or otherwise and, if the contention were made, we would be obligated to

reject it as fundamentally unsound, based upon the plain meaning of Minnesota Statutes Section 626.90.

Of course, "[i]n interpreting statutes, the Court begins by examining the plain meaning of the statutory language," and "[w]ords that are not defined in a statute are accorded their ordinary or natural meaning." *Midwest Interstate Low–Level Radioactive Waste Com'n v. O'Leary,* 926 F.Supp. 134, 136 (D.Minn.1996), citing *Smith v. Smith,* 508 N.W.2d 222, 225 (1993); *Nadeau v. Austin Mut. Ins.,* 350 N.W.2d 368, 373 (Minn.1984) (statutes should be construed according to their plain and ordinary meaning); *Minnesota Statutes Section 545.08(1)* ("Words and phrases are construed according to rules of grammar and according to their common and approved usage * * *.").

In our construction of statutes, we are to "ascertain and effectuate the intention of the legislature." *Minnesota Statutes Section 645.16.* "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* Applying these canons of construction to the language of Section 626.90, we find that the Plaintiffs' arguments must fail. First, the Mille Lacs Defendants have not raised any challenge to their being subject to the Plaintiffs' suit. Rather, the Mille Lacs Defendants challenge the forum for such a suit, and urge a stay of this action, pending a resolution of the jurisdictional issue in the Tribal Court. Further, nothing in Section 626.90, or in the corresponding cooperative agreement, so much as suggests that the Tribal Courts have been divested of jurisdiction to adjudicate disputes arising on reservation land,[5] or that

---

5. In *Prescott v. Little Six, Inc.,* 897 F.Supp. 1217, 1222 (D.Minn.1995), a Tribal Court enabling ordinance did not expressly grant jurisdiction over Employee Retirement Income Security Act, Title 29 U.S.C. § 1132 ("ERISA") claims. *Id.* As such, the Plaintiffs asked the Court to find, "by negative infer-

ence", that the tribal court lacked jurisdiction to consider their ERISA claims. The Court rejected this argument, and stated:

> Under the law of this Circuit * * * tribal court jurisdiction is to be decided in the first instance by the tribal court, not the

the Tribe is without authority to enforce Tribal rules, or laws, on Tribal land, against individuals who are not members of the Tribe. Rather, the clear language of Section 626.90, and the related cooperative agreement, provide that the Band is liable for its torts, to the same extent as a municipality, and that, in this respect, the Band has waived its sovereign immunity as to such claims.

The Plaintiffs argue that Anita Fineday's [6] ("Fineday's") comments to Representative Vellenga, who was the Chair of the State of Minnesota House Judiciary Committee, on April 12, 1991, lend support to the proposition that Section 626.90 was intended to divest the Tribal Court of jurisdiction over nonmembers of the Band.[7] While this argument may be correct, at least with respect to the understanding of Fineday, and Representative Vellenga, concerning the intent of the Statute, there is nothing in the clear language of the Statute, itself, to effectuate that supposed intent. As such, we have no occasion, here, to judicially legislate language which the Minnesota Legislature did not incorporate into a Statute which, upon a plain reading, is unambiguous. See, *Minnesota Statutes Section 645.16* ("[T]he letter of the law shall not be disregarded under the pretext of pursuing the spirit.").

Accordingly, having ascertained the plain meaning of the language of Section 626.90, our role in statutory construction is at an end, and we are obligated to apply that meaning to the facts before us. See, *State v. Larson*, 605 N.W.2d 706, 714 (Minn.2000) ("Accordingly, the plain mean-

ing and language of a statute will normally end our inquiry."); citing *State v. Merrill*, 450 N.W.2d 318, 321 (Minn.1990). Specifically, as we have explained, Section 626.90 provides that the Band is to be liable for its torts, to the same extent as a municipality, and that the Tribe expressly waived its sovereign immunity for such purposes.

As our Court of Appeals has made clear, we are not to read a purported waiver of sovereign immunity, by the Band, as eliminating the exhaustion requirement. See, *Davis v. Mille Lacs Band of Chippewa Indians*, 193 F.3d 990, 992 (8th Cir.1999), cert. denied, —— U.S. ——, 120 S.Ct. 1834, 146 L.Ed.2d 778 (2000), citing *National Farmers Union Ins. Cos. v. Crow Tribe*, supra at 855–56, 105 S.Ct. 2447 ("[T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty," and "[w]e believe that examination should be conducted in the first instance in the Tribal Court itself"); *Duncan Energy v. Three Affiliated Tribes*, supra at 1299. Notably, in *Davis*, the Court upheld a decision of the District Court, which had determined that a plaintiff was required to exhaust her Tribal Court remedies, despite the fact that the Band had expressly waived its immunity in Section 626.90. We are obliged to accept the rulings of our Court of Appeals when, as here, they are fully dispositive of the legal issues before us, and therefore, it is clear that the Band's waiver of sovereign immunity has no effect on the requirement that the Plaintiffs exhaust the remedies, that are available to

---

federal court, and federal courts must defer to a tribal court's interpretation of its law. *Id.*, citing *Duncan Energy v. Three Affiliated Tribes*, 27 F.3d 1294, 1299 (8th Cir.1994); *Runs After v. United States*, 766 F.2d 347, 352 (8th Cir.1985) (holding that "disputes involving questions of interpretation of [a] tribal constitution and tribal law is not within the jurisdiction of the district court").

**6.** Anita Fineday appeared before the State of Minnesota House Judiciary Committee on April 12, 1991, as a representative of the Mille

Lacs Chippewa Band, in order to comment on the enactment of Section 626.90.

**7.** Specifically, the Plaintiffs point to the following exchange:

Chair: Our question for Ms. Fineday. This bill does not give any civil or criminal jurisdiction to the tribal court over nonmembers of the Band, is that correct?
Ms. Fineday: Yes, Madam Chair and Representative, that's correct.
*Greenberg Aff., Ex. B*, at 13.

them, in the Tribal Court.[8]

Next, the Plaintiffs contend that the Mille Lac's Defendant's Motion "can only be characterized as a bad faith motion brought solely to harass Plaintiffs, delay these proceedings and increase costs of litigation for all parties concerned." *Memorandum in Opposition to Motion to Stay Proceedings,* at 11. As such, the Plaintiffs argue that their failure to exhaust Tribal Court remedies should be excused. While such a contention, if proved, could properly stave a resort to Tribal Court, see *National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* supra at 856 n. 21, 105 S.Ct. 2447, here the Plaintiffs have proffered no evidence to support any suggestion of bad faith on the part of the Mille Lacs Defendants.

Thus, the Tribal Court may properly determine whether it has jurisdiction to review the Plaintiffs' claims, and principles of comity, and deference to Tribal self-government, preclude this Court from further adjudication of the merits of the Plaintiffs' claim, absent exhaustion in the Tribal Courts. See, *Honorable Douglas F. Longie v. Myra Pearson, et al.,* supra at *1 (finding that exhaustion of Tribal Court remedies was required where interpretation of tribal resolutions, and tribal law, was involved), citing *Bruce H. Lien Co. v. Three Affiliated Tribes,* 93 F.3d 1412, 1420 (8th Cir.1996) (exhaustion of tribal court remedies required where many parties are tribal entities or members, and dispute arises from tribal government activity involving project located within reservation borders); *Runs After v. United States,* 766 F.2d 347, 352 (8th Cir.1985) (dispute as to interpretation of tribal resolutions, tribal constitution, tribal bylaws, and tribal election ordinance raises questions of tribal law that should first be presented to Tribal Court); *DeMent v. Oglala Sioux Tribal Court,* 874 F.2d 510, 512, 517 (8th Cir. 1989) (before seeking Habeas relief in Federal Court, father seeking custody of children residing on reservation should have exhausted tribal remedies by appealing Tribal Court's refusal to enforce Custody Decree); see also, *Alva Rose Hall v. Bruce Babbitt, et al.,* supra at *2 (noting that exhaustion was required even though Secretary of the Interior was named as a Defendant and the dispute implicated a federal statute).

Lastly, we do not suggest, by anything contained in this Order, that the Tribal Court, in fact, has subject matter jurisdiction over the Plaintiffs' action. As the Court explained, in *Strate v. A–1 Contractors,* 520 U.S. 438, 445, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997):

> Our case law establishes that, absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances. * * * [I]n certain circumstances, even where Congress has not expressly authorized it, tribal civil jurisdiction may encompass nonmembers:
>
> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct

---

8. The Plaintiffs attempt to distinguish *Davis,* in part, because the plaintiff, there, was a member of the Band, whereas, here, the Plaintiffs are not Band members. We find this distinction, however, to be unpersuasive. See, *Alva Rose Hall v. Bruce Babbitt, et al.,* 208 F.3d 218, 2000 WL 268485 at *3 (8th Cir., March 10, 2000) (requiring exhaustion of tribal remedies where not all involved parties were tribal members), citing *Bruce H. Lien Co. v. Three Affiliated Tribes,* 93 F.3d 1412, 1420 (8th Cir.1996).

effect on the political integrity, the economic security, or the health or welfare of the tribe. [Montana v. United States, 450 U.S. 544,] 565–66, 101 S.Ct. 1245, 67 L.Ed.2d 493 [ (1988) ].

\* \* \* \* \* \*

Montana thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare.

But cf., *Iowa Mutual Ins. Co. v. LaPlante*, supra at 18, 107 S.Ct. 971 ("Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. \* \* \* Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty or federal statute. \* \* \* In the absence of any indication that Congress intended the diversity statute to limit the jurisdiction of the tribal courts, we decline petitioner's invitation to hold that tribal sovereignty can be impaired in this fashion.").

Of necessity, therefore, we leave this jurisdictional question to the Tribal Court, in the first instance, but the ultimate issue of jurisdiction will, of equal necessity, be subject to our independent review, as the need should arise. See, *Iowa Mutual Ins. Co. v. LaPlante*, supra at 19, 107 S.Ct. 971 ("Although petitioner must exhaust available tribal remedies before instituting suit in federal court, the \* \* \* Tribal Court's determination of tribal jurisdiction is ultimately subject to review. If the Tribal Appeals Court upholds the lower court's determination that the tribal courts have jurisdiction, petitioner may challenge that ruling in District Court."), citing *National*

*Farmers Union Ins. Cos. v. Crow Tribe of Indians*, supra at 853, 105 S.Ct. 2447.

NOW, THEREFORE, It is—

ORDERED:

1. That the Mille Lacs Defendants' Motion to Stay [Docket No. 13] is GRANTED, with respect to all of the Defendants.

2. That the Defendants' Motions for Summary Judgment [Docket Nos. 34 and 35] be denied, as moot.

3. That, **on October 4, 2000, at 1:00 o'clock p.m.,** the Court shall conduct a Status Conference in this matter, with the Court initiating the telephone conference call, and the parties are directed to notify the Court promptly, if cause may be shown to lift the Stay that we impose in this action.